1  Richard D. McCune, State Bar No. 132124
   rdm@mccunewright.com
2  David C. Wright, State Bar No. 177468
   dcw@mccunewright.com
3  Elaine S. Kusel (NY #2654754)*
   esk@mccunewright.com
4  **McCuneWright LLP**
   2068 Orange Tree Lane, Suite 216
5  Redlands, California  92374
   Telephone:  (909) 557-1250
6  Facsimile:  (909) 557-1275

7  Joseph G. Sauder (PA #82467)*
   jgs@mccunewright.com.com
8  Matthew D. Schelkopf (PA #89143)*
   mds@mccunewright.com
9  Joseph B. Kenney (PA #316557)*
   jkb@mccunewright.com
10 **McCuneWright LLP**
   1055 Westlakes Drive, Suite 300
11 Berwyn, Pennsylvania 19312
   Telephone:  610.200.0580
12
   *Pro Hac Vice* applications to be submitted
13
   Attorneys for Plaintiff and Putative Class
14

15              **IN THE UNITED STATES DISTRICT COURT**

16          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

17 M.P.B. on behalf of himself and all others     | Case No.:
   similarly situated,
18                                                  | **CLASS ACTION COMPLAINT**
                     Plaintiff,
19                                                  |    1.  **VIOLATION OF UNFAIR BUSINESS
          v.                                        |        PRACTICES ACT [CALIFORNIA
20                                                  |        BUSINESS & PROFESSIONS CODE
   THERANOS, INC., and DOES 1 through 10,           |        § 17200, *ET SEQ.*]
21 inclusive,                                       |    2.  **VIOLATION OF FALSE ADVERTISING
                                                    |        LAWS [CALIFORNIA BUSINESS &
22                   Defendants.                    |        PROFESSIONS CODE § 17500, *ET SEQ.*]
                                                    |    3.  **VIOLATION OF CALIFORNIA'S
23                                                  |        CONSUMER LEGAL REMEDIES ACT
                                                    |        [CALIFORNIA CIVIL CODE § 1750, *ET
24                                                  |        SEQ.*]
                                                    |    4.  **FRAUD**
25                                                  |    5.  **NEGLIGENT MISREPRESENTATION**
                                                    |    6.  **DECEIT [CALIFORNIA CIVIL CODE
26                                                  |        § 1710]**
                                                    |    7.  **VIOLATION OF ARIZONA CONSUMER
27                                                  |        FRAUD ACT [A.R.S. § 44-1521, *ET SEQ.*]**
28                                                  | **DEMAND FOR JURY TRIAL**

CLASS ACTION COMPLAINT

# I

## INTRODUCTION

1.      This consumer fraud class action is based on Defendant Theranos's false and misleading marketing of itself as a disruptive technology in the laboratory services business.  What allegedly made Theranos a breakthrough was its proprietary Edison blood testing devices.  In contrast to the large needle and numerous tubes required in a typical venipuncture blood draw, Theranos's Edison devices were handheld machines, supposedly able to take a few drops of blood from a patient's finger placed into a nanotainer capsule, and conduct hundreds of blood tests, all outside a lab.

2.      Theranos sold its new "tiny blood test" at Wellness Centers at Walgreens Pharmacies in Arizona and California.  Theranos assured its customers that these tests were highly accurate, industry leading in quality, and developed and validated under, and compliant with, federal guidelines. Thousands of people, including Plaintiff M.P.B., believed the Company's representations and paid for Theranos's tests.

3.      However, the Edison machines did not work, and Theranos's tests were not accurate. This became evident on May 19, 2016, when Theranos conceded that it had informed regulators that it had voided "all" of the Company's blood-testing results from its proprietary Edison machines, as well as many tests run on traditional machines from 2014 and 2015.[1]  As a result, tens of thousands of patients may have been given incorrect blood-test results, been subject to unnecessary or potentially harmful treatments, and/or been denied the opportunity to seek treatment for a treatable condition.

4.      Plaintiff M.P.B., for himself, and all others similarly situated, (*i.e.*, the members of the Plaintiff Class described and defined within this Complaint), brings this action for damages, including reimbursement of the purchase price of the tests as well as an order enjoining Theranos from engaging in further deceptive advertisements, pursuant to the Unfair Advertising, California Business and Professional Code §17200, *et seq.*; False Advertising, California Business & Professional Code § 17500, *et seq.*; Consumer Legal Remedies Act, California Civil Code §1750, *et seq.*; statutory deceit,

---

[1] In the Scottsdale Facility, regulators found that the Company used misprogrammed machines to evaluate blood coagulation tests, failed to properly gauge water purity in machines it used, and failed to meet laboratory quality standards.

CLASS ACTION COMPLAINT

California Civil Code §1710; and common law fraud and negligent misrepresentation, and alleges as follows:

## II

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because Plaintiff and Defendant are citizens of different states and because, upon information and belief, the aggregate amount in controversy exceeds $5,000,000 exclusive of costs and interest.

6.     This Court has personal jurisdiction over the Defendant because Defendant has conducted and continues to conduct business in the State of California, and because Defendant has committed the acts and omissions complained of herein in the State of California.

7.     Venue as to Defendant is proper in this judicial district.  Defendant Theranos, Inc., is headquartered in Palo Alto, California, and operates a laboratory in Newark, California, and many of Defendant's acts complained of herein occurred in this district.

## III

## PARTIES

8.     Plaintiff M.P.B. is a resident and citizen of Arizona.  He purchased a Theranos test at a Walgreen's in Tempe, Arizona, in or around December 2015.  Plaintiff M.P.B. purchased the Theranos test to get accurate results about his health.  Plaintiff M.P.B. would not have purchased a Theranos test if he had known that the Theranos Edison device did not work as described, and that the Company did not conduct accurate testing.

9.     Defendant Theranos (hereinafter the "Company") is a blood testing company based in Palo Alto, California. The Company operates two laboratories, one in Newark, California, and another in Scottsdale, Arizona. Through Wellness Centers located predominantly in Walgreens pharmacies in Arizona and California, Theranos sells blood tests to individuals. Since it began offering testing services in 2013, the company has conducted 6.1 million diagnostic tests.

10.     The true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by such fictitious

names.  Each of the Defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein.  Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of the Defendants designated herein as DOES when such identities become known.

11.     Based upon information and belief, Plaintiff alleges that at all times mentioned herein, each and every Defendant was acting as an agent and/or employee of each of the other Defendants, and at all times mentioned was acting within the course and scope of said agency and/or employment with the full knowledge, permission, and consent of each of the other Defendants.  In addition, each of the acts and/or omissions of each Defendant alleged herein were made known to, and ratified by, each of the other Defendants.

## IV

## FACTUAL BACKGROUND

12.     Theranos was founded in 2003 by Elizabeth Holmes who has maintained that she developed the idea for the company as a result of her self-professed phobia of needles.  According to published reports, the Company initially focused on development of a hand held device that would use a tiny needle to obtain a small drop of blood for analysis.  By 2008, the project had grown into what is now known as the Edison device.

13.     In contrast to the large needle and numerous tubes required in a typical veinipuncture blood draw, Theranos's Edison device was designed to eliminate the need for laboratories all together. The concept was that a nanotainer containing a few drops of blood from a finger stick would be placed into a cartridge  which would, in turn, be placed into a proprietary Edison device (which Theranos executives have never allowed to be photographed) where a button pushed by a staff person generates results that are automatically transmitted to Theranos's databases.  This concept would have enabled Theranos to conduct all testing outside of the laboratory in the Wellness Centers and thus – according to Theranos – revolutionize testing by significantly reduing costs.

14.     People believed Theranos's Edison Technology was a true disruptive technology breakthrough. The Company's founding CEO, Elizabeth Holmes, was hailed as the next Steve Jobs and

CLASS ACTION COMPLAINT

by 2014, Theranos was valued at $9 billion – approximately the same as each of its two largest and long established competitors in the blood testing industry.

15.     By 2010, Theranos was in talks with Safeway and Walgreens to offer Edison testing in its stores.  After several years of discussions, in 2013, Theranos entered into a partnership agreement with Walgreens, under which Walgreens invested $50 million in Theranos, and Theranos agreed to operate blood drawing centers, which it called "Wellness Centers" at Walgreens Pharmacies in Arizona and California.  The Theranos Walgreens partnership agreement launched in 2013 with a plan to build Theranos Wellness Centers in more than 8,200 Walgreen stores nationwide.

16.     Before entering the partnership with Theranos, Walgreens' Chief Medical Officer neither reviewed Theranos's technology nor independently validated or verified the results of the tests,[2] but the Company nevertheless said it was confident in the data before introducing the services. When the Walgreens partnership was announced, the press release stated that the deal would offer consumers access to "less invasive and more affordable clinician-directed lab-testing, from blood samples as small as a few drops, or 1/1000 the size of a typical blood draw."

17.     Theranos relied on the joint venture agreement with Walgreens, under which Theranos has opened 40 wellness centers within Walgreen's pharmacy stores in Arizona, and one in a pharmacy in California, to sell most of its tests.  In its sales materials to Walgreens customers, Theranos highlighted the proprietary technology and described its offerings as a "tiny blood test," a "new way" of testing.  The materials repeatedly referenced smaller sample size and depicted the nanotainer. Additionally, the materials assured that Theranos was "industry leading in quality and its tests were highly accurate and developed and validated under and to Federal guidelines."  Thousands of people, including Plaintiff believed the Company's representations, and paid for blood testing at Walgreen Wellness Centers.

//

//

---

[2] http://www.economist.com/news/business/21697273-pressure-mounting-startup-has-tried-shake-up-lab-test-market-blood-sports (last visited May 23, 2016).

CLASS ACTION COMPLAINT

18.     Theranos described its technology as follows:



19.     In its marketing to Walgreens' customers, Theranos focused its advertising message on the idea that its lab services were based on proprietary technology and a different model which required far smaller samples and far less blood than typical blood testing:



20.     On another webpage advertisement to Walgreen's customers, the Company stated that smaller samples had a direct benefit on patients by dramatically reducing the time it takes to analyze samples because its technology enabled a "more timely diagnosis to support better, more informed treatment."[3]

//

//

_____

[3] http://www.walgreens.com/pharmacy/lab-testing/home.jsp (last visited May 22, 2016).

CLASS ACTION COMPLAINT



21.     At Walgreens, Theranos offered a variety of testing directly to consumers:

-7-

**Theranos's Statements About its Wellness Center Testing Were False**

22.     Though Holmes had spent years working to perfect the Edison device in order to achieve a lofty goal, by the time the Wellness Centers opened, the Edison machines were not yet beyond the prototype stage.

23.     Theranos did not have the necessary FDA approval, known as a CLIA waiver, to use the Edison Device for conducting on-site blood testing at the Wellness Centers, with the sole exception of a single test (Herpes Simplex HSV-1), for which the company obtained approval in July 2015.

24.     Despite the Company's representations to the public about the importance of the nanotainer and its proprietary technology, by the end of 2014, Theranos was using its proprietary Edison machines and nanotainers for only 15 out of 205 tests.

25.     In a report detailing objectionable conditions at Theranos dated September 16, 2015, the FDA informed Theranos that, among other things, the agency considered the nanotainer devices to be uncleared medical devices being shipped in interstate commerce.[4]

---

[4] http://www.fda.gov/ucm/groups/fdagov-public/@fdagov-afda-orgs/documents/document/ucm469395.pdf (last visited May 23, 2016).

CLASS ACTION COMPLAINT

26.     Because Theranos did not have FDA approval to conduct tests on the Edison device outside of a laboratory setting (with the limited exception discussed above), when Theranos drew blood at the Walgreen's Wellness Centers, the samples obtained then had to be couriered to one of the Company's two centralized labs, either in Newark, California, or Scottsdale, Arizona.  The proprietary Edison devices were only located in the Newark laboratory and, accordingly, all the finger stick blood samples were analyzed at that facility.

27.     The Scottsdale Lab only performed analyses on venipuncture tests, and only analyzed those samples on machines purchased from outside companies such as Siemens.

28.     In the context of a regulated laboratory, Theranos did not need FDA approval to perform testing using the Edison devices, so long as the Company complied with proficiency testing and other safeguards; however, the blood labs failed to comply with such testing and guidelines according to published reports.

**The Lab Testing at Theranos's Offsite Labs Was Not Accurate and/or Accomplished in Accordance With Federal Guidelines**

29.     Theranos advertised that its labs were accurate "validated" or compliant with federal regulations or law.  Specifically:



CLASS ACTION COMPLAINT

30.     However, these representations were false.  In January 2016, the Centers for Medicare and Medicaid Services cited the Newark lab for multiple serious deficiencies.  Among other things, in October 2014, 29 percent of quality control checks performed on the Company's Edison devices produced results outside the acceptable range.  Regardless, Theranos continued to rely on the Edison devices.

31.     In February 2015, an Edison device used for testing certain hormone levels failed 87 percent of quality control checks.

32.     In addition, the FDA observed that there were no quality audits being performed at the Newark lab in contravention of FDA regulations.[5]

33.     At the very time that Theranos was advertising compliance with federal regulations, it had been repeatedly sanctioned by federal authorities.  For example, on March 18, 2016, the Company had received a letter from the Centers for Medicare and Medicaid Services (CMS) referenced "RE: PROPOSED SANCTIONS - CONDITIONS NOT MET IMMEDIATE JEOPARDY", which stated that the Company was not in compliance with accepted clinical laboratory standards.  That letter stated, "This letter provides notice of sanctions the Centers for Medicare & Medicaid Services (CMS) is proposing to impose against the laboratory's Clinical Laboratory Improvement Amendments of 1988 (CLIA) certificate and of the laboratory's opportunity to submit in writing any evidence or information as to why the proposed sanctions should not be imposed."  The letter noted that, based on a December 23, 2015, survey, Theranos was found to be out of compliance with five CLIA Condition-level requirements and CMS determined that various CLIA Standard-level requirements were not met.[6]

34.     Inspection reports found that Edison machines in the lab often failed to meet the Company's own accuracy requirements, including a test to detect prostate cancer.

35.     Theranos's conventional laboratory operations in both Scottsdale and Newark were found to be flawed by government regulators.

---

[5] http://www.fda.gov/ucm/groups/fdagov-public/@fdagov-afda-orgs/documents/document/ucm469395.pdf (last visited May 23, 2016).

[6] http://www.wsj.com/public/resources/documents/hhslettertheranos.pdf (last visited May 23, 2016).

36.     According to published reports, at Theranos's Scottsdale lab, the Company performed lab tests with certain Siemens lab equipment programmed to the wrong settings, and failed to adequately guage the purity of the water input into Siemens lab equipment, which could effect the outcome of the results of testing run on such devices.

37.     Finally, a peer reviewed study by researchers at the Icahn School of Medicine at Mount Sinai showed that results for cholesterol tests done by Theranos differed enough from the two largest laboratory companies that it could negatively impact patient care.

38.     Accordingly, those staments to customers, asserting that testing was accomplished through proprietary analysis, which was accurate and compliant with federal regulations and guidelines, were false.

**V**

**CLASS ACTION ALLEGATIONS**

39.     Plaintiff bring this action on behalf of himself and two potential classes pursuant to Federal Rules of Civil Procedure, Rule 23(a), 23(b)(2), and/or 23(b)(3), defined as follows:

<u>**National Class:**</u>

All purchasers of Theranos lab panels and blood testing services

40.     In the alternative, pursuant to Federal Rules of Civil Procedure, Rule 23(c)(5), Plaintiff seeks to represent the following state class only in the event that the Court declines to certify the Nationwide Class above. Specifically, the State Class is defined as follows:

<u>**Arizona Subclass:**</u>

All purchasers of Theranos lab panels and blood testing services in Arizona.

41.     This action is brought as a class action and may properly be so maintained pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure.  Plaintiff reserves the right to amend or modify the Class description with greater specificity or further division into subclasses or limitation to particular issues, based on the results of discovery.  Excluded from the Class are Defendant, its affiliates, employees, officers and directors, persons or entities, and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change, or expand the Class definition.

CLASS ACTION COMPLAINT

42.   **Numerosity of the Class** – The members of the Class are so numerous that their individual joinder is impracticable.  There were approximately 6.1 million tests performed by Theranos.  Plaintiff believes there are thousands of members in the class.  Inasmuch as the class members may be identified through business records regularly maintained by Defendant and its employees and agents, and through the media, the number and identities of class members can be ascertained.  Members of the Class can be notified of the pending action by e-mail, mail, and supplemented by published notice, if necessary.

43.   **Existence and Predominance of Common Question of Fact and Law** – There are questions of law and fact common to the Class.  These questions predominate over any questions affecting only individual class members.  These common legal and factual issues include, but are not limited to:

   a.   Whether the laboratory tests performed by Theranos were accurate;

   b.   Whether the Edison devices performed as advertised;

   c.   Whether Theranos's testing delivered the highest degree of accuracy;

   d.   Whether Theranos's statements about its laboratories were materially misleading;

   e.   Whether Theranos's conduct violates the laws as set forth in the causes of action.

44.   **Typicality** – The claims of the representative Plaintiff are typical of the claims of each member of the Class.  Plaintiff, like all other members of the Class, has sustained damages arising from Defendant's violations of the law, as alleged herein.  The representative Plaintiff and the members of the Class were and are similarly or identically harmed by the same unlawful, deceptive, unfair, systematic, and pervasive pattern of misconduct engaged in by Defendant.

45.   **Adequacy** – The representative Plaintiff will fairly and adequately represent and protect the interests of the Class members and have retained counsel who are experienced and competent trial lawyers in complex litigation and class action litigation.  There are no material conflicts between the claims of the representative Plaintiff and the members of the Class that would make class certification inappropriate.  Counsel for the Class will vigorously assert the claims of all Class members.

CLASS ACTION COMPLAINT

46.     **Predominance and Superiority** – This suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to the Class predominate over the questions affecting only individual members of the Class and a class action is superior to other available means for the fair and efficient adjudication of this dispute.  The damages suffered by individual class members are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct.  Further, it would be virtually impossible for the members of the Class to individually redress effectively the wrongs done to them.  Even if Class members themselves could afford such individual litigation, the court system could not.  In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from complex legal and factual issues of the case. Individualized litigation also presents a potential for inconsistent or contradictory judgments.  By contrast, the class action device presents far fewer management difficulties; allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

47.     The Plaintiff contemplates the eventual issuance of notice to the proposed Class members setting forth the subject and nature of the instant action.  Upon information and belief, Defendant's own business records and electronic media can be utilized for the contemplated notices. To the extent that any further notices may be required, the Plaintiff would contemplate the use of additional media and/or mailings.

48.     This action is properly maintained as a Class Action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

      a.   Without class certification and determination of declaratory, injunctive, statutory and other legal questions within the class format, prosecution of separate actions by individual members of the Class will create the risk of:

            i.   Inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the parties opposing the Class; or

CLASS ACTION COMPLAINT

ii.  Adjudication with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests;

b.  The parties opposing the Class have acted or refused to act on grounds generally applicable to each member of the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole; or

c.  Common questions of law and fact exist as to the members of the Class and predominate over any questions affecting only individual members, and a Class Action is superior to other available methods of the fair and efficient adjudication of the controversy, including consideration of:

i.  The interests of the members of the Class in individually controlling the prosecution or defense of separate actions;

ii.  The extent and nature of any litigation concerning controversy already commenced by or against members of the Class;

iii.  The desirability or undesirability of concentrating the litigation of the claims in the particular forum;

iv.  The difficulties likely to be encountered in the management of a Class Action.

## VI

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## (Violation of California Business & Professions Code Sections 17200, *et seq.* – Unfair Business Practices Act)

## (On Behalf of the Nationwide Class)

49.  Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

50.     Plaintiff brings this claim on behalf of himself and on behalf of the National Class defined above.

51.     The Unfair Business Practices Act defines unfair business competition to include any "unfair," "unlawful," or "fraudulent" business act or practice.  The Act also provides for injunctive relief, restitution, and disgorgement of profits for violations.

52.     Defendant's unlawful, unfair, and fraudulent business acts and practices are described throughout this Complaint and include, but are not limited to the following:  1) advertising that it will provide testing using proprietary Edison devices when, in fact, Theranos did not actually use the Edison devices for most laboratory testing; and 2) conducting testing that was a not carried out within proper federal regulations.  In addition to the above, the conduct as alleged throughout the complaint constitutes a violation of False Advertising Laws, Cal. Bus. & Prof. Code § 17500, *et seq*., the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, statutory deceit, Cal. Civ. Code § 1710) and fraud and negligent misrepresentation that not only result in liability as to the individual causes of action, they also provide a basis for a finding of liability under California Business and Professions Code § 17200, *et seq*.

53.     Furthermore, Defendant's practices violate the declared legislative policies as set forth by the federal government in 40 C.F.R. § 600.307(a)(ii)(A); 40 C.F.R. § 600.302-08(b)(4) and 16 C.F.R. § 259.2(a).

54.     Plaintiff and the Class members have been damaged by said practices.  Pursuant to California Business and Professions Code §§ 17200 and 17203, Plaintiff, on behalf of himself and all others similarly situated, seeks relief as prayed for below.

## SECOND CAUSE OF ACTION

### (Violation of California Business & Professions Code Sections 17500, *et seq.* – False Advertising Laws)

### (On Behalf of the Nationwide Class)

55.     Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

56.     Plaintiff brings this claim on behalf of himself and on behalf of the National Class defined above.

57.     Defendant disseminated materially misleading and deceptive information and omitted material information, as discussed throughout the Complaint, for purposes of inducing customers to purchase the tests, in violation of California Business and Professions Code § 17500, *et seq.*

58.     Plaintiff and the Class, and each of them, have been damaged by said practice and seeks relief as prayed below.

### THIRD CAUSE OF ACTION

### (Violation of California Civil Code Section 1750 *et seq.* –Consumer Legal Remedies Act)

### (On Behalf of the Nationwide Class)

59.     Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

60.     Plaintiff brings this claim on behalf of himself and on behalf of the National Class defined above.

61.     The following definitions come within the meaning of the Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*):

    a.   The members of the Class, all of whom purchased tests sold by Theranos are "consumers," Cal. Civ. Code § 1761(d);

    b.   Defendant Theranos is a "person," Cal. Civ. Code § 1761(c);

    c.   Plaintiff and each and every Class members' purchase of the subject test constitute a "transaction," Cal. Civ. Code § 1761(e); and

    d.   The subject tests are "goods," Cal. Civ. Code § 1761 (a).

62.     The acts and practices of Defendant as discussed throughout the Complaint, constitute "unfair or deceptive acts or practices" by Defendant, that are unlawful, as enumerated in section 1770(a) of the California Civil Code.

63.     Such misconduct materially affected the purchasing decisions of Plaintiff and the members of the Classes.

64.     Plaintiff seeks injunctive relief pursuant to California Civil Code § 1780.

CLASS ACTION COMPLAINT

65.     As a result of the California Civil Code section 1770 violations described above, Plaintiff and each and every member of the Class have suffered actual damages.

## FOURTH CAUSE OF ACTION

### (Fraud)

### (On Behalf of the Nationwide and Arizona Classes)

66.     Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

67.     Plaintiff brings this claim on behalf of himself and on behalf of the National Class, or the Arizona Class in the alternative, as defined above.

68.     The misrepresentations, nondisclosure, and/or concealment of material facts made by Defendant to Plaintiff and the members of the Class, as set forth above, were known, or through reasonable care should have been known, by Defendant to be false and material and were intended by Defendant to mislead Plaintiff and the members of the Class.

69.     Plaintiff and the Class were actually misled and deceived and were induced by Defendant to purchase the testing which they would not otherwise have purchased.

70.     As a result of the conduct of Defendant, Plaintiff and the Class members have been damaged.  In addition to such damages, Plaintiff seeks punitive or exemplary damages pursuant to California Civil Code § 3294 in that Defendant engaged in "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury."

## FIFTH CAUSE OF ACTION

### (Negligent Misrepresentation)

### (On Behalf of the Nationwide and Arizona Classes)

71.     Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

72.     Plaintiff brings this claim on behalf of himself and on behalf of the National Class, or the Arizona Class in the alternative, as defined above.

CLASS ACTION COMPLAINT

73.     Defendant had a duty to provide honest and accurate information to its customers so that customers could make informed decisions on the purchase laboratory testing.

74.     Defendant specifically and expressly misrepresented material facts to Plaintiff and the Class members, as discussed above.

75.     Defendant knew, or in the exercise of reasonable diligence should have known, that the ordinary consumer would be misled by Defendant's misleading and deceptive advertisements.

76.     Plaintiff and the Class members justifiably relied on Defendant's misrepresentations and have been damaged thereby.

**SIXTH CAUSE OF ACTION**

**(California Civil Code § 1710 - Deceit)**

**(On behalf of the Nationwide Class)**

77.     Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

78.     Plaintiff brings this claim on behalf of himself and on behalf of the National Class, or the Arizona Class in the alternative, as defined above.

79.     Based on Defendant's conduct as discussed above, Defendant has engaged in fraud and deceit as set forth in California Civil Code § 1710.  Plaintiff and the Class members have reasonably relied on the material misrepresentations and omissions made by Defendant and have been damaged thereby.

**SEVENTH CAUSE OF ACTION**

**(Violation of Arizona Consumer Fraud Act, A.R.S. § 44-1521, et seq.)**

**(On Behalf of the Arizona Class)**

80.     Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

81.     Plaintiff brings this claim on behalf of himself and on behalf of the National Class, or the Arizona Class in the alternative, as defined above.

82.     Plaintiff brings this claim on behalf of himself and on behalf of the National Class, as defined above.

CLASS ACTION COMPLAINT

83.     Defendants are "persons" within the meaning of A.R.S. § 44-1521(6).

84.     Theranos lab panels and blood tests sold in Arizona are "merchandise" within the meaning of A.R.S. § 44-1521(5).

85.     The Arizona Consumer Fraud Act provides that "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."  A.R.S. § 44-1522(A).

86.     Based on Defendant's conduct as discussed above, Defendant has engaged in fraud and deceit as set forth in Arizona Arizona Consumer Fraud Act.  Plaintiff and the Class members have reasonably relied on the material misrepresentations and omissions made by Defendant and have been damaged thereby.

87.     Pursuant to the Arizona Consumer Fraud Act, Plaintiff seeks damages described above as well as judicial orders of an equitable nature against Defendant, including, but not limited to, orders declaring such practices as are complained of herein to be unlawful, unfair, fraudulent and/or deceptive and enjoining them from undertaking any further unfair, unlawful, fraudulent and/or deceptive acts or omissions.

88.     8.     In addition, Plaintiff seeks disgorgement of profits and restitution plus interest due thereon at the legal rate.

89.     Plaintiff also seeks punitive damages according to proof and reasonable costs and attorneys fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the members of the Class, demands judgment against and general and special relief from Defendant as follows:

1.     An order certifying that the action may be maintained as a Class Action under Federal Rule of Civil Procedure 23 as defined herein and appointing Plaintiff and his counsel of record to represent the defined Class;

CLASS ACTION COMPLAINT

2.     An order enjoining Defendant under California Business and Professions Code §§ 17203 and 17535, California Civil Code §§ 1780 and 1781, and Arizona Revised Statue § 44-1521, *et seq.*:

    a. To reimburse Plaintiff and the Class members the purchase price for all Theranos tests as restitution of all funds improperly obtained by Defendant as a result of such acts and practices declared by this Court to be an unlawful, fraudulent, or an unfair business act or practice, a violation of laws, statutes, or regulations, or constituting unfair competition;

    b. To disgorge all profits and compensation improperly obtained by Defendant as a result of such acts and practices declared by this Court to be an unlawful, fraudulent, or an unfair business act or practice, a violation of laws, statutes, or regulations, or constituting unfair competition; and

    c. To cease engaging in false advertising and to disseminate an informational campaign to correct its misrepresentations and material omissions.

3.     For damages under the causes of action for fraud, negligent misrepresentation, statutory Deceit, and the Arizona Consumer Fraud Act;

4.     For punitive damages, pursuant to California Civil Code § 3294 and the Arizona Consumer Frad Act;

5.     For reasonable attorney's fees and costs, pursuant to California Code of Civil Procedure § 1021.5, the Arizona Consumer Fraud Act, and other statutes as may be applicable;

6.     For prejudgment interest to the extent allowed by law;

7.     For costs of suit incurred herein;

8.     For such other and further relief as the Court deems appropriate.

DATED:  May 25, 2016                   MCCUNEWRIGHT, LLP

                                 BY:    */s/Richard D. McCune*_____
                                          Richard D. McCune
                                        Attorney for Plaintiff

CLASS ACTION COMPLAINT

1

**DEMAND FOR JURY TRIAL**

2

Plaintiff, and all others similarly situated, hereby demand a trial by jury herein.

3

4

DATED:  May 25, 2016                                        M<small>C</small>C<small>UNE</small>W<small>RIGHT</small>, LLP

5

6                                                      BY:      _/s/*Richard D. McCune*_____
                                                              Richard D. McCune
7                                                              Attorney for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT